BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT 205, WILL COUNTY, Plaintiff-Appellee, v. THE PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellees (Taft Elementary School District 90, Will County, Plaintiff, v. The Property Tax Appeal Board *et al.*, Defendants-Appellees; The Metropolitan Sanitary District of Greater Chicago, Plaintiff-Appellant, v. The Property Tax Appeal Board *et al.*, Defendants-Appellees; Board of Education of Township High School 205, Will County, Plaintiff-Appellee, v. The Property Tax Appeal Board *et al.*, Defendants-Appellees; Taft Elementary School District 90, Will County, Plaintiff, v. The Property Tax Appeal Board *et al.*, Defendants-Appellees).

Third District   No. 3—85—0353

Opinion filed March 21, 1986.

William T. Kaplan, of Thomas, Wallace, Feehan, Baron & Kaplan, Ltd., of Joliet, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones-Stewart, Solicitor General and Kathryn A. Spalding, Assistant Attorney General, of Chicago, of counsel), for appellee Illinois Property Tax Appeal Board.

Scott Nemanich, Assistant State's Attorney, of Joliet, for appellee Board of Review of Will County.

Michael D. Block, of Block, Krockey, Cernugel & Cowgill, P.C., of Joliet, for appellee Board of Education of Township High School District 205.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiff Taxpayer, Metropolitan Sanitary District (MSD), and several school districts, brought an action under the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*) for a review of a decision of the Illinois Property Tax Appeal Board (PTAB) concerning real estate tax valuations of a hydroelectric generating

plant for the years 1978, 1980 and 1981. The plaintiff sought to have the assessments for the power plant reduced, while the school districts sought to have the assessments increased. The plaintiff's basic contention was that the PTAB committed an error when applying the income approach method of valuation. After hearing evidence and argument, the circuit court of Will County determined: (1) the electricity produced by plaintiff is sold to Commonwealth Edison pursuant to a contract, (2) the amount of water plaintiff may take from Lake Michigan to produce electricity is judicially restricted to 3,200 cfs (3,500 cfs at certain times), thus restricting income, (3) the power plant is a financial investment and (4) the PTAB improperly disregarded the income approach to valuation used by plaintiff's appraiser. The cases were then remanded to the PTAB for a decision consistent with the court's findings. The PTAB issued a decision on remand substantially identical to its first decision. Plaintiff again petitioned for review, and the circuit court affirmed the PTAB's decision. This appeal followed.

The Lockport powerhouse is located in the Chicago Sanitary and Ship Canal on 1½ acres of land. A government lock, which permits commercial navigation into the canal, is next to or near the plant. The powerhouse facility was built as part of the canal. The canal is used to provide a path for Chicago's treated sewage to flow into the Mississippi River. The house itself is a one-story brick and block building in which are eight generator bays. Originally, seven of the bays contained seven horizontal water turbines designed to handle a water flow of 10,000 cfs. In 1932 and 1967, the United States Supreme Court limited and modified respectively the amount of water diverted from Lake Michigan into the canal to 3,200 cfs.

In 1934, two vertical generators, each having an operating capacity of 2,100 cfs, were installed in the powerhouse, replacing the seven earlier turbines. The remaining bays were either sealed or contain the sluice gates used to control the water flowage. The property also has several ancillary structures, roadways, parking lots and fencing.

Ronald Becker, an independent appraiser retained by Metropolitan Sanitary District, appraised the power plant for 1978, 1980 and 1981 using both the cost approach and the income approach. The cost approach formula started with an estimate of the cost to construct the power plant today and then subtracted three types of depreciation; physical depreciation, functional depreciation and economic depreciation. With respect to the income approach for the years 1978 and 1980, Becker projected income based upon the previous year's actual dollars earned, allowed for a projected annual increase in income, sub-

tracted projected expenses and lastly, divided the net income figure by an estimated capitalization rate. For the year 1981, because Becker felt electricity prices could not continue to rise, he used a substantially lower than actual previous years dollars earned figure to project income.

The Lockport Township assessor presented as its expert witness James Cleminshaw, who submitted a written appraisal for one year only. Cleminshaw testified he spent four days examining the power plant and assessed valuation using only the cost approach.

The PTAB discussed and analyzed the appraisals of both plaintiff and Lockport Township. The PTAB found weaknesses, discrepancies, and/or unsupportable assumptions in the methods and figures used by plaintiff to calculate fair market values. It also found the cost approach to fair market value as used by the Lockport Township's expert could not be the sole exclusive measure of value and that the income approach must be considered along with the cost approach. Applying equity jurisdiction, the PTAB determined the power plant was underassessed and assigned its own assessed valuations. The PTAB then presented a detailed analysis of how it determined the assessed valuations of the power plant.

The plaintiff appealed from this determination, contending PTAB's method of calculating income was erroneous and resulted in overvaluation of the property. Since there is no dispute as to the methods used by the PTAB to calculate either the projected expenses or the capitalization rate, those figures are not discussed herein. The first issue before this court is whether the PTAB's use of capacity income rather than actual income was a proper method of valuation.

In calculating the fair market value of the power plant under the income and cost approaches, the PTAB maintained all economic considerations and resulting ramifications are to be based upon 3,200 cfs of water passing through the turbine generators, rejecting Becker's calculations using actual income earned. PTAB's position is premised upon *Springfield Marine Bank v. Property Tax Appeal Board* (1970), 44 Ill. 2d 428, 256 N.E.2d 334, wherein the court held in valuing income-producing property, the potential income of the property must be considered rather than its actual income.

Plaintiff steadfastly maintains he is in agreement with and does not seek to overturn the rule of *Springfield Marine Bank* and argues PTAB failed to apply a widely acknowledged appraisal step. Plaintiff contends, after determining potential gross income, the next step in the income approach is to determine effective gross income. Effective gross income is potential gross income less vacancy. Plaintiff argues

while the canal is permitted a flow of water of 3,200 cfs, only approximately 2,400 cfs of water averagely flows through the turbines. Plaintiff calls this difference a "vacancy factor" and attributes it to leakage around the government locks, dry seasons when waterflow is less than 3,200 cfs and downtime due to generator maintenance. Plaintiff further argues PTAB's refusal to apply the vacancy factor represents a failure to apply a proper method of determining fair market value and is grounds for reversing the trial court's decision.

■ Section 111.4 of the Revenue Act of 1939 (Ill. Rev. Stat. 1983, ch. 120, par. 592.4) provides decisions of the PTAB "shall be based on equity and the weight of the evidence ***." It seems clear from this provision the legislature has specifically stated the standard to be applied by the PTAB, and that standard must be followed and applied by the Board. Our function on administrative review is to determine whether the PTAB has acted within and according to the provisions of the statute creating it, and whether or not there is substantial evidence to support its decision.

In our opinion, the increase in assessed valuation of the power plant by the PTAB was both legally and factually proper. We found nothing in the record which would indicate that the PTAB assessing officers were not acting in good faith, or that any knowledge was brought to their attention of facts and circumstances which would indicate that there was a gross overassessment on the value of the power plant. A vacancy factor for any particular property must be determined by a study of other comparable properties and an analysis of their rental histories, as well as the recent history of vacancies in the subject property. In the instant case, Becker did not consider any other vacancies in reaching its suggested vacancy factor and instead determined vacancy upon actual operating figures. The PTAB is not bound as a matter of law to accept the actual income figures as supplied by plaintiff. *Springfield Marine Bank v. Property Tax Appeal Board* (1970), 44 Ill. 2d 428, 256 N.E.2d 334.

■ Plaintiff lastly contends the trial court erred in upholding the PTAB's assessed valuation of the Lockport Power Plant because the PTAB assessing officer did not apply a one-year level of assessment. The PTAB is not required, either under Illinois law or its official rules, to apply a one-year assessment level. Section 111.2 of the Revenue Act of 1939 (Ill. Rev. Stat. 1983, ch. 120, par. 592.2) authorizes the PTAB to "establish by rules an informal procedure for the determination of the correct assessment of property which is the subject of an appeal." The PTAB promulgated Rule 4D pursuant to section 111.2, which requires the taxpayer to present evidence of the fair

market value of the subject property as a prerequisite to the use of the median assessment level by the county. The PTAB in this action adjusted the assessed valuations submitted by the parties because none of the valuations presented convincing evidence of the fair market value of the power plant. That the PTAB has authority to grant relief from disparity in levels of assessment within a county was established in *Stephens v. Property Tax Appeal Board* (1976), 42 Ill. App. 3d 550, 356 N.E.2d 355. The court in *Stephens* expressly rejected the contention that the PTAB's jurisdiction was limited to the determination of fair cash value of the taxpayer's property. The PTAB's assessed valuation reflected the facts as presented by the parties and constituted a proper exercise of the agency's equitable authority. We find the PTAB decision was not contrary to the weight of the evidence and was not inequitable, and the judgment of the circuit court must be affirmed.

Affirmed.

SCOTT, P.J., and WOMBACHER, J., concur.