LA SALLE PARTNERS, INC., Petitioner-Appellant, v. ILLINOIS PROP-
ERTY TAX APPEAL BOARD *et al.*, Respondents-Appellees.

Second District    No. 2—93—1374

Opinion filed February 16, 1995.—Rehearing denied March 22, 1995.

John D. Norcross and Joseph J. Butler, both of Crane & Norcross, of Chicago, for petitioner.

James E. Ryan, Attorney General, of Chicago (Susan Frederick Rhodes, Assistant Attorney General, of counsel), for respondent Illinois Property Tax Appeal Board.

Michael J. Waller, State's Attorney, of Waukegan (Ares G. Dalianis, Assistant State's Attorney, of counsel), for respondent Lake County Board of Review.

Scott E. Nemanich, of Brydges, Riseborough, Morris, Franke & Miller, of Chicago, for respondent Deerfield Park District.

JUSTICE BOWMAN delivered the opinion of the court:

Petitioner, La Salle Partners, Inc., seeks administrative review of a decision by the Property Tax Appeal Board (PTAB). This court has jurisdiction of this direct appeal from the PTAB under section 16—195 of the Property Tax Code (35 ILCS 200/16—195 (West Supp. 1993)), which provides for direct appeal to the appellate court where a change in assessed valuation of $300,000 or more is sought. The decision by the PTAB which petitioner seeks to have reviewed increased the real estate tax assessments on two properties above the level set by the Lake County Board of Review (Board of Review).

In the appeal to the PTAB, petitioner alleged that the Board of Review overvalued the two subject properties for the years of 1991 and 1992, and sought a reduction in their assessments. Following a hearing, the PTAB decided instead to increase the assessments and this appeal followed, consolidating the challenges to both the 1991 and 1992 assessments.

In arguing for reversal of the PTAB's decision, petitioner offers three contentions: (1) the PTAB acted outside its statutory authority when it increased the assessments made by the Board of Review; (2) the proceedings before the PTAB were marred by a number of procedural irregularities; and (3) the PTAB's decision was against the manifest weight of the evidence.

The subject properties are two office buildings referred to, respectively, as Phase I and Phase III of the Parkway North Center. They are located in Deerfield, in an area commonly known as the Lake-Cook Road corridor. Phase I is a five-story masonry office building of approximately 361,686 square feet. Phase I was constructed in 1986 and sits on an 11.23-acre site. It has a five-story atrium consisting of approximately 100,000 square feet, leaving a net rentable area of approximately 251,643 square feet. The Board of Review's assessment for Phase I indicated a market value of $21,906,782 in 1991 and $22,314,623 in 1992. Its sister building, Phase III, is also a five-story masonry office building. Phase III was constructed in 1990 and is situated on a 9.09-acre site. It contains approximately 268,400 square feet, with a net rentable area of approximately 250,045 square feet. The assessment for Phase III indicated a market value of $19,675,725 in 1991 and $20,042,027 in 1992. Petitioner's appeal to the PTAB challenged these assessments as being too high.

While petitioner's appeal to the PTAB was pending, the Deerfield Park District (Park District), a taxing district with a revenue interest in the property, filed a request to intervene in the appeal to the PTAB, which was granted. The request to intervene did not contain a copy of the resolution of the Park District's governing board authorizing the intervention, as required under PTAB Rule 1910.60(d). (Official Rules of the Property Tax Appeal Board § 1910.60(d).) There is no indication in the record that the governing board of the Park District ever authorized its intervention in petitioner's appeal to the PTAB. However, in the proceedings below, petitioner made no objection to the Park District's intervention.

The PTAB appeal proceeded to a hearing. The hearing consisted primarily of the testimony of Theodore Kowalski, called by petitioner, and Howard Richter, called by the Board of Review. Both witnesses are certified real estate appraisers, and the parties stipulated to their qualifications. In estimating the value of the properties, both appraisers used three standard approaches: the cost approach, the income approach, and the market approach. Each appraiser reconciled his valuations under the three approaches to arrive at a final estimated value for each building.

Theodore Kowalski, petitioner's appraiser, first estimated the

buildings' value using the cost approach. The cost approach involves a determination of (1) the cost of the unimproved land on which the subject property is situated; and (2) the cost of constructing a new building on that land with proper adjustments for depreciation and obsolescence. Kowalski also estimated the properties' value using the income approach. This method requires comparison of the rental structure of the subject buildings with that of comparable properties. Kowalski relied on six comparable rentals, one of which was located in Deerfield, and five of which were located elsewhere.

Next, Kowalski estimated the properties' value using the market approach. Kowalski considered the degree of comparability between each subject property and other properties sold on the open market, with appropriate adjustments to account for differences. He used eight comparable sales, five of which were in Cook County, two in Lake County, and one in Du Page County. He stated that he chose sales outside the Lake-Cook Road corridor because he believed it was difficult to find arm's length transactions in that area. His appraisal did not consider the sale of the Premark building, located approximately 200 yards from the subject properties because, in his opinion, it was not an arm's length transaction. For both subject properties, he testified that he relied most heavily on the market approach in arriving at the final estimates of value. Reconciling all three approaches, Kowalski arrived at an estimated value of $16,500,000 for Phase I and a value of $15 million for Phase III.

Howard Richter, the Board of Review's appraiser, used the same three approaches to valuation. Richter, however, chose to utilize comparable properties located in the immediate vicinity of the subject properties, because he considered the Lake-Cook Road corridor to be unique in the Chicago metropolitan area. Using the cost approach, Richter analyzed vacant land sales from within the Lake-Cook Road corridor and made appropriate adjustments for the date of sale and market conditions. Richter found the cost approach to be the least appropriate method of valuation for buildings of this type. Richter also employed the income approach. He chose a number of comparable rental properties, all within two miles of the subject properties. He then calculated the effective rent of each property, including adjustments for factors such as concessions to tenants, vacancy, and collection losses.

Richter also valued the properties under the market approach. In reaching his final evaluations, he gave preference to the market approach because of the high degree of similarity between the comparable property sales he used and the subject properties. Richter looked at the sales of four properties, all located in the immediate Lake-

Cook Road corridor. He found the best indicator of value to be the sale of the Premark building, which was closest to the subject properties in location and had the most similar characteristics. Reconciling his value estimates under all three approaches, Richter reached a final estimated value of $23,800,000 for Phase I and $22,400,000 for Phase III.

The PTAB's decision, issued November 3, 1993, found that the Board of Review's assessment was incorrect and decided that the evidence before it indicated the correct assessment of the subject properties should be based on Richter's appraisals. The PTAB thus concluded a market value of $23,800,000 for Phase I and $22,400,000 for Phase III. Petitioner appeals this decision.

Petitioner's first contention is that division four of the Revenue Act of 1939, now the Property Tax Code (35 ILCS 205/111.1 *et seq.* (West 1992) (now codified, as amended, at 35 ILCS 200/16—160 *et seq.* (West Supp. 1993))) (the PTAB statute), which sets forth the powers and duties of the PTAB, does not permit that body to set an assessment higher than that set by a county board of review. According to petitioner, the legislature created the PTAB for the specific purpose of giving taxpayers a forum in which they could seek a reduction in their tax assessments. Petitioner maintains that allowing the PTAB to increase assessments would be fundamentally at odds with the legislature's intent.

Respondents note the PTAB statute expressly mandates that the PTAB is responsible for determining the correct assessment for property. Setting the correct assessment, they contend, may require adjustment upward or downward from the assessment set by a county board of review, depending on the weight of the evidence before the PTAB. Thus, according to respondents, the decision in the present case, which revised the assessment upward, was entirely within the PTAB's power.

In determining whether the PTAB acted within its power, we turn to the familiar tenets of statutory interpretation. The fundamental principle of statutory construction is that courts are to give effect to the intent of the legislature. (*In re Illinois Bell Switching Station Litigation* (1994), 161 Ill. 2d 233, 246; *Williams v. Illinois State Scholarship Comm'n* (1990), 139 Ill. 2d 24, 51.) The first step in determining legislative intent is to look to the plain meaning of the statutory language. (*Ziarko v. Soo Line R.R. Co.* (1994), 161 Ill. 2d 267, 283.) Where, however, the legislature's intent is not clear from the face of the statute, or the language is susceptible to more than one interpretation, it is proper to look elsewhere for legislative intent. (*Williams*, 139 Ill. 2d at 51.) Thus, courts may consider the reason

and necessity for the statute and the evils sought to be remedied. (*Granite City Division of National Steel Co. v. Illinois Pollution Control Board* (1993), 155 Ill. 2d 149, 181.) In keeping with these principles, we first look to the PTAB statute's language for guidance.

Petitioner points to a number of sections, sentences, and phrases within the statute and argues they support its position that the PTAB lacked the authority to increase the Board of Review's assessment. First, section 16—185 of the PTAB statute states "in case the assessment is altered by the [Property Tax Appeal] Board, any taxes extended upon the unauthorized assessment or part thereof shall be abated, or, if already paid, shall be refunded with interest." (35 ILCS 200/16—185 (West Supp. 1993).) The unmistakable implication of this language, according to petitioner, is that any time an assessment is altered by the PTAB, the result is an abatement or refund of taxes. Petitioner asserts that this language shows the legislature's intent to confer upon the PTAB the power to decrease an assessment, without conferring a coinciding power to increase. Petitioner further notes the fact that other clauses of section 16—185 provide for procedures to be followed in the event an assessment is lowered, without any corresponding mention of the procedures to be followed where an assessment is increased.

■ We agree that, when read in isolation, the clauses cited by petitioner create the impression that the legislature assumed the PTAB would only have the power to lower assessments. However, statutory language should not be read in isolation. (See *Employers Mutual Cos. v. Skilling* (1994), 256 Ill. App. 3d 567, 572.) Rather, in interpreting a statute, we read it as a whole, giving meaning to every word and paragraph. (*Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund* (1993), 155 Ill. 2d 103, 111.) In so doing, we give words used by the legislature their plain and ordinary meaning. (*Granite City*, 155 Ill. 2d at 181.) Reading the statute as a whole, we find other language which negates petitioner's narrow interpretation of the PTAB's power.

For example, section 16—180, entitled "Procedure for determination of correct assessment," indicates that the function of the PTAB is to determine the *correct* assessment of the property in issue. (35 ILCS 200/16—180 (West Supp. 1993).) The word "correct" is defined as "conforming to or agreeing with fact." (Webster's Third New International Dictionary 511 (1986).) Applying this definition to the statute, it requires the PTAB to determine the assessment for a particular piece of property that conforms to the facts in evidence before it. To do this, it must be able to independently evaluate the evidence, unhindered by the conclusions of the board of review below.

Our interpretation of the word "correct," as used in section 16—180, is supported by the fact that the same section states: "[a]ll appeals shall be considered de novo." (35 ILCS 200/16—180 (West Supp. 1993).) Under the *de novo* standard of review, the assessments set by a board of review are entitled to no deference on appeal to the PTAB. (*Commonwealth Edison Co. v. Property Tax Appeal Board* (1984), 102 Ill. 2d 443, 464; *Residential Real Estate Co. v. Illinois Property Tax Appeal Board* (1989), 188 Ill. App. 3d 232, 241.) Petitioner's suggestion that the PTAB is prohibited from setting an assessment higher than that set by the board of review is at odds with the legislature's provision for the PTAB to set the correct assessment in the context of a *de novo* review.

Similarly, section 16—185 of the PTAB statute provides that "the decision [of the PTAB] shall be based upon equity and the weight of evidence." (35 ILCS 200/16—185 (West Supp. 1993).) This language has been interpreted to require that the PTAB consider only the evidence in the record before it, without reference to the conclusions of the board of review. (See *Illini Country Club v. State Property Tax Appeal Board* (1994), 263 Ill. App. 3d 410, 416; *Kennedy Brothers, Inc. v. Property Tax Appeal Board* (1987), 158 Ill. App. 3d 154, 165-66.) Thus, by its plain language, the legislature has mandated that the PTAB independently determine the correct assessment for a property by weighing the evidence before it. Nothing in the statute indicates the PTAB's power to arrive at the correct assessment is limited by the findings of the board of review.

In fact, in seeking to fulfill its obligation to determine correct assessments, the PTAB has on numerous occasions increased assessments set by boards of review. (See, *e.g.*, *Illini Country Club*, 263 Ill. App. 3d at 414-15; *Residential Real Estate*, 188 Ill. App. 3d at 238-39; *Showplace Theatre Co. v. Property Tax Appeal Board* (1986), 145 Ill. App. 3d 774, 775-77; *Board of Education of Township High School District 205 v. Property Tax Appeal Board* (1986), 142 Ill. App. 3d 853, 855-56; *Commonwealth Edison Co. v. Property Tax Appeal Board* (1978), 67 Ill. App. 3d 428, 429-30.) Although none of these cases involved a challenge to the PTAB's authority to increase an assessment, the courts in each assumed the PTAB had the power to do so.

For example, in *Board of Education*, the plaintiff-taxpayer, the Metropolitan Sanitary District, sought a reduction of property tax assessments for a hydroelectric power plant. The plaintiff was opposed by the Lockport Township assessor, who had set the challenged assessment. Following a hearing, the PTAB found weaknesses in the evidence of both the taxpayer and the township. Accordingly, it exercised its equitable powers, determined the plant to be underas-

sessed, and assigned its own assessed valuations. (*Board of Education*, 142 Ill. App. 3d at 855-56.) After noting that the statute provides decisions of the PTAB "shall be based on equity and the weight of the evidence" (142 Ill. App. 3d at 857), the court concluded:

"In our opinion, the increase in assessed valuation of the power plant by the PTAB was both legally and factually proper. We found nothing in the record which would indicate that the PTAB assessing officers were not acting in good faith, or that any knowledge was brought to their attention of facts and circumstances which would indicate that there was a gross overassessment on the value of the power plant." *Board of Education*, 142 Ill. App. 3d at 857.

It is true that the PTAB's prerogative to increase an assessment was not directly at issue in *Board of Education*, or in any of the other instances where it has done so. However, these cases, read together, indicate that under the PTAB's long-standing interpretation of its own enabling statute, it has the power to increase assessments. The PTAB's interpretation of the scope of its power under the statute is further evident in the PTAB Rules. For example, Rule 1910.67(c) states:

"All proceedings before the Property Tax Appeal Board are de novo which shall mean that the Property Tax Appeal Board will consider only the evidence, exhibits and briefs submitted to it, and will not give any weight to or consideration of any prior actions by a local Board of Review." Official Rules of the Property Tax Appeal Board § 1910.67(c).

The clear import of this rule is that under the PTAB's construction of the statute it administers, it is to evaluate the evidence before it independently, without consideration of the board of review's conclusions. Courts generally accord deference to the statutory interpretations of an agency charged with the statute's administration. (*Reed v. Kusper* (1992), 154 Ill. 2d 77, 86; *Sandburg Faculty Association, IEA-NEA v. Illinois Educational Labor Relations Board* (1993), 248 Ill. App. 3d 1028, 1034.) Thus, while we exercise an independent review of the PTAB's conclusions of law (*Worth v. Board of Trustees of the Police Pension Fund* (1992), 230 Ill. App. 3d 349, 353), we may look to its interpretation of its own enabling statute as an informed source for discovering legislative intent. In the present case, these rules demonstrate the PTAB has long assumed it has the power to depart from a board of review's assessment under appropriate circumstances, even if this results in the assessment being increased.

Our conclusion that the PTAB possesses the power to increase assessments is further supported by the fact that the PTAB statute has

been amended several times over the years and no attempt has been made to overrule or invalidate any of the above-cited court decisions or PTAB rules. It is presumed that the legislature is aware of prior judicial interpretations of statutes. (*Carver v. Bond/Fayette/ Effingham Regional Board of School Trustees* (1992), 146 Ill. 2d 347, 353.) Because the legislature is presumed to be aware of judicial constructions of its statutes, the reenactment of a statute constitutes an adoption of prior judicial constructions. (See *People v. Palmer* (1984), 104 Ill. 2d 340, 349; *OSF Healthcare Systems v. County of Lee* (1993), 239 Ill. App. 3d 824, 828.) Thus, we may reasonably presume that in reenacting the PTAB statute, the legislature was aware of, and acquiesced in, the construction given it by the appellate court in prior cases and by the PTAB in its rules.

■ Petitioner next argues that recognizing the PTAB's power to increase assessments would create a chilling effect on taxpayer appeals. Taxpayers, petitioner reasons, would choose to forego an appeal to the PTAB rather than risk having their assessments increased above the levels set by the local board of review. We believe this argument is based on a misunderstanding of the role of the PTAB within the statutory scheme of the Property Tax Code.

As an initial matter, petitioner's description of the PTAB's action in the present case as "increasing" the assessment of the Board of Review is something of a misnomer. Because the PTAB statute provides for *de novo* appeals, and no deference is accorded the Board of Review's assessment, the PTAB's decision to set an assessed valuation higher than that set by the Lake County Board of Review is not literally an increase. Under the scheme created by the PTAB statute, an appeal to the PTAB does not afford taxpayers the right to request that a higher authority rule upon the correctness of a lower authority's findings. Rather, it affords taxpayers and taxing bodies a "second bite at the apple," *i.e.*, an opportunity to have assessments recomputed by a reviewing authority whose power is not circumscribed by any previous assessment. To the extent this statutory scheme might dissuade certain individual taxpayers from appealing their assessments to the PTAB, that is an effect of which the legislature was presumably aware when it enacted the statute.

In light of the language, purpose, and long-standing administrative interpretation of the PTAB statute (35 ILCS 200/16—160 *et seq.* (West Supp. 1993)), we conclude it grants the PTAB the authority to raise a property tax assessment set by a board of review, where equity and the weight of the evidence so dictate. We therefore hold that the PTAB was within its statutory authority when it modified upward the assessments on petitioner's two properties.

■ Petitioner next argues that, assuming *arguendo*, the PTAB did have the power to increase the assessments in the present case, it failed to comply with its own rules of procedure in doing so. Specifically, petitioner asserts (1) the Park District's intervention was procedurally improper under PTAB Rule 1910.60(d); and (2) the PTAB failed to comply with PTAB Rule 1910.67(e), which requires a prehearing conference where a change in assessed valuation of $100,000 or more is sought. (Official Rules of the Property Tax Appeal Board §§ 1910.60(d), 1910.67(e).) Petitioner contends these procedural errors caused prejudice, requiring reversal of the PTAB's decision.

Respondents maintain that by failing to object to these procedural irregularities in the PTAB petitioner has waived his right to raise them on appeal. Further, respondents deny that either of the claimed errors was prejudicial.

Petitioner's first claim of procedural error concerns the intervention of the Park District. PTAB Rule 1910.60(d) allows a taxing body that has a revenue interest in an appeal to the PTAB to intervene. This rule also provides that the request to intervene must be accompanied by a copy of the resolution of the governing board of the taxing body authorizing the intervention. Official Rules of the Property Tax Appeal Board § 1910.60(d).

Petitioner is correct in noting that the intervention of the Deerfield Park District was procedurally improper under this rule. The record does not contain any resolution of the Park District's governing board authorizing its intervention, and the Park District does not claim that any such resolution exists. However, we fail to see how petitioner suffered any substantial injustice as a result of this oversight. Section 3—111 of the Administrative Review Law provides that technical errors in the proceedings before the administrative agency are grounds for reversal only where the error materially affected the rights of the complaining party and resulted in substantial injustice. 735 ILCS 5/3—111(b) (West Supp. 1993).

In the present case, petitioner has not shown that the Park District's intervention materially affected its rights or caused substantial injustice. At oral argument, counsel for petitioner contended that petitioner was prejudiced by the intervention because the Park District was the only party to request that the PTAB increase the assessments above those originally set by the Board of Review. This contention is not borne out by the record. Counsel for the Board of Review argued in his closing statement that the appraisal performed by Howard Richter was "more on target" and should be accepted by the PTAB. Counsel for the Park District stated

in his closing: "the valuations placed on the properties by Mr. Richter are the correct valuation." Thus, both the Board of Review and the Park District urged the PTAB to accept Richter's valuations. Petitioner's suggestion at oral argument that but for the Park District's intervention, the PTAB would not have accepted Richter's appraisal, is unsupported by the record.

Throughout the hearing before the PTAB, the Park District's participation was minimal. It presented no evidence, engaged in minimal cross-examination of petitioner's expert witness, and made a brief closing statement which was largely duplicative of the closing statement made by counsel for the Board of Review. Petitioner's assertion that this limited degree of participation caused reversible prejudice is unpersuasive. See *Parisi v. Jenkins* (1992), 236 Ill. App. 3d 42, 53.

Petitioner's second claim of procedural error relates to the PTAB's failure to hold a prehearing conference. Petitioner argues that because there was no prehearing conference, it did not learn the Board of Review was seeking to increase the assessment on the subject properties above the level it had originally set until its closing statement.

Respondents reply that this claim is waived. They note that petitioner was served with a copy of Richter's appraisal report, which valued the subject properties higher than the Board of Review's assessment more than one month prior to the hearing, but failed to object. Further, they point out that petitioner made no objections to Richter's valuations during the PTAB hearing or by way of a post-hearing motion.

It is axiomatic that if an argument or objection is not made in an administrative proceeding, it is waived and may not be raised for the first time on administrative review. (*Lebajo v. Department of Public Aid* (1990), 210 Ill. App. 3d 263, 268; see also *Lake County Board of Review v. Property Tax Appeal Board* (1989), 192 Ill. App. 3d 605, 619.) Although petitioner correctly notes that PTAB Rule 1910.67(e) requires the PTAB to hold a prehearing conference in all cases where a change in assessed valuation of $100,000 or more is sought, at no time in the proceedings below did petitioner object to the PTAB's failure to hold the prehearing conference. Additionally, petitioner did not object to Richter's testimony that the value of the properties was higher than the Board of Review's original values, or to the Board of Review's and Park District's closing statements urging the PTAB to accept Richter's figures. Having failed to raise objections on these issues at the appropriate time, petitioner may not raise them now. (See *Lebajo*, 210 Ill. App. 3d at 268.) Finally, even if we were to

conclude this claim was not waived, petitioner has failed to show that the lack of a prehearing conference materially affected its rights or caused substantial injustice. See *Parisi*, 236 Ill. App. 3d at 53.

■ Petitioner's final contention is that the decision of the PTAB is against the manifest weight of the evidence. We disagree. In deciding whether the decision of the PTAB is against the manifest weight of the evidence, we are bound by the same standard of review applicable to any proceeding under the Administrative Review Law. (*Robinson v. Property Tax Appeal Board* (1979), 72 Ill. App. 3d 155, 156.) Upon administrative review, the function of the reviewing court is limited to determining whether the findings and conclusions of the administrative agency are against the manifest weight of the evidence. (*Illini Country Club*, 263 Ill. App. 3d at 417; *Mead v. Board of Review* (1986), 143 Ill. App. 3d 1088, 1095.) A finding is against the manifest weight of the evidence where all reasonable and unbiased persons would agree that it is erroneous and that the opposite conclusion is clearly evident. (*Daily v. Board of Trustees of the Police Pension Fund* (1993), 251 Ill. App. 3d 119, 122.) The administrative agency's findings and conclusions on questions of fact are held to be *prima facie* true and correct. (735 ILCS 5/3—110 (West 1992); *Iwanski v. Streamwood Police Pension Board* (1992), 232 Ill. App. 3d 180, 184.) Because the weight of the evidence and the credibility of the witnesses are uniquely within the province of the administrative agency, there need only be some competent evidence in the record to support its findings. (*Farmers State Bank v. Department of Employment Security* (1991), 216 Ill. App. 3d 633, 640.) A mere difference of opinion is an insufficient basis on which to claim the PTAB's findings are unwarranted by the evidence. See *Mathers v. County of Mason* (1992), 232 Ill. App. 3d 1095, 1100; *Board of Review v. Illinois Property Tax Appeal Board* (1982), 104 Ill. App. 3d 859, 862.

After carefully reviewing the record, we conclude the PTAB's decision is supported by ample evidence. The PTAB was confronted with divergent opinions from two well-qualified experts, and the evidence before it was fairly well balanced. In reaching its decision, the PTAB stated that it considered both experts' appraisals, but found that Richter's appraisal was entitled to more weight because it was better documented, used comparables located in the immediate vicinity of the subject properties, and was generally better supported by the evidence. The PTAB determined that Kowalski's comparables were located too far from the subject properties to be accorded substantial weight and that Kowalski was unable to verify much of the sales data on which he relied.

In sum, faced with a difference of opinion between two qualified

experts, the PTAB evaluated the credibility and documentary support for each appraiser's opinion and reached a well-reasoned decision.

Accordingly, for the reasons stated above, we affirm the decision of the Property Tax Appeal Board.

Affirmed.

DOYLE and COLWELL, JJ., concur.