THE BOONE COUNTY BOARD OF REVIEW, Plaintiff-Appellant, v. THE PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellees.

Second District    Nos. 2—95—0563, 2—95—0564 cons.

Opinion filed December 12, 1995.

Roger T. Russell, State's Attorney, of Belvidere (William L. Browers, John X. Breslin, and Judith Z. Kelly, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Jessie A. Wang-Grimm, Assistant Attorney General, of counsel), for appellee Property Tax Appeal Board.

Elmer C. Rudy, of Williams & McCarthy, P.C., of Rockford, for appellees Robert Laken and Barbara Laken.

PRESIDING JUSTICE McLAREN delivered the opinion of the court:

This case is a consolidated appeal from two actions for administrative review from a decision of the defendant Property Tax Appeal Board (PTAB) correcting the plaintiff Boone County Board of Review's (Board's) assessed valuation of two mobile home parks, owned by defendants Robert and Barbara Laken and Amos and Carma Yoder, for the 1991 and 1992 tax years. On administrative review, the trial court affirmed the decisions of the PTAB. The Board appeals. We affirm.

For the tax years of 1991 and 1992, Belvidere Township assessed certain additions constructed by mobile home owners against the mobile home *park* owners. Specifically, the assessed additions included canopies, decks, porches, and garages that mobile home owners, who were leasing lots from the park owners, placed on the lots.

Both the Yoders, owners of the Four Seasons Mobile Home Park (Four Seasons), and the Lakens, owners of the Greenview Estates Mobile Home Park (Greenview), filed real estate assessment appeals with the PTAB, alleging that the additions made by the mobile home owners were improperly classified as improvements to real estate owned by the Yoders and the Lakens. The Yoders requested an assessment reduction of $84,947, and the Lakens requested a reduction in the amount of $107,917.

Amos Yoder testified at the PTAB hearing that he purchased Four Seasons in 1986. At that time, the real estate consisted of roadways, sewers, and water infrastructure. Yoder testified that each of the approximately 290 lots located on the real estate is rented out to an owner of a mobile home and includes a plot of ground with a driveway, a concrete pier for the mobile home, a concrete slab patio, a sidewalk, an electrical pedestal, and water and sewer risers. Yoder stated that additions to the mobile homes, such as canopies, decks, porches, and garages, are paid for, built, and owned by the individual mobile home owners. Tenants are allowed to construct the additions, provided that they have a city building permit and the park owner approves of the building materials and determines that the location of the addition meets the setback requirements of the subdivision plat. The lease between Yoder and the individual mobile home owners provides that when the mobile home owner moves out he is to take the improvements with him. If the improvements are not

removed, Yoder removes and destroys any remaining improvements, billing the tenant for the cost of removal. If the mobile home owner sells his mobile home, generally the additions stay with the mobile home, and the purchaser signs a new lease with Yoder. Yoder does not own the additions. The amount Yoder charges for rent varies between single-wide homes and double-wide homes, but is not dependent upon what additions the previous owner of the home attached to the home.

Yoder also described and explained how the additions are generally constructed. He said that canopies are usually attached to the mobile homes, extending 10 to 12 feet, and rest on aluminum posts which are connected to the concrete slab patio by a concrete anchor bolt. Yoder stated that there was only one deck in the Four Seasons and that he was not certain how the deck was constructed. He indicated that enclosed porches and garages are usually placed on concrete, some with footings and others on four- to five-inch-thick concrete floating slabs without footings.

Yoder further stated that he had no knowledge of how mobile home additions at the Four Seasons were assessed prior to 1979.

Robert Laken testified that he had purchased Greenview in 1973. Similar to the situation at Four Seasons, at Greenview, Laken rents out lots to tenants who own mobile homes. Laken also testified that tenants purchase canopies, decks, porches, and garages for their leased property and that Laken has no ownership in these additions. Also similar to the Four Seasons, Greenview mandates that mobile home owners obtain park approval for the site of the improvements to ensure compliance with setback requirements and a building permit. In an affidavit, Laken stated that tenants are free to remove or replace additions at their discretion. When a tenant sells his home and the home stays on the site, the addition remains with the home if Greenview finds that the condition of the addition is not deteriorated. Laken stated in his affidavit that the additions are never rented to a new tenant by Greenview. At the PTAB hearing, Laken testified that he has seen some garages moved with the mobile homes.

In addition, Laken indicated that none of the garages currently existing in Greenview have footings and, instead, are all built on concrete slabs. He stated that canopies and decks are constructed in the same manner as those additions at Four Seasons. In an affidavit, Laken stated that canopies are normally affixed to the mobile home. At Greenview, decks are placed on the ground and are sometimes attached to the home, but are not built in the ground in any way.

Laken further testified that, when he purchased Greenview in 1973, the canopies, decks, porches, and garages were not assessed as

part of the real estate. He also stated that he had no knowledge of whether the mobile home owners paid property taxes on the additions to their homes prior to 1978.

The Board contended that the additions to the mobile homes were permanent improvements that should be assessed to the land. Robert Falkenstein, the Belvidere Township assessor, testified for the Board that, prior to 1991, the value of canopies, decks, porches, and garages was not assessed as real property in Boone County, but that he included the value of these improvements when assessing the real estate at Four Seasons and Greenview in 1991. Falkenstein testified that he did so with reliance upon a letter from Ron Hagaman of the Illinois Department of Revenue, which stated, "since decks, patios, garages, porches and carports are additions to the mobile home, they should be assessed as real estate." The parties stipulated that the market value of the additions to mobile homes at both Four Seasons and Greenview remained unchanged from 1991 to 1992. Falkenstein stated that the improvements at Four Seasons totalled $254,840 in market value in 1991, while those at Greenview totalled $323,750.

Patricia Elder, the supervisor for assessments for Boone County, also testified for the Board. She stated that, in Boone County, improvements to property are assessed according to one-third of the market value of the improvement. In her view, the ownership of the improvement was not relevant to the assessment, as long as the improvement was to the land. When questioned as to why the county did not assess mobile home parks for additions to mobile homes prior to 1991, Elder responded that, prior to 1991, such additions "did not exist as they do today" and had no value.

Following the PTAB hearing, counsel for the mobile home park owners submitted a letter, dated March 15, 1994, to the PTAB which was addressed to the executive director of the Illinois Manufactured Housing Association and signed by Raymond Wagner, Director of the Illinois Department of Revenue. Wagner's letter proposed tests for assessors to employ in determining whether additions such as decks, patios, garages, and porches should be assessed as improvements to the real property and stated that, in all likelihood, improvements to mobile homes did exist prior to 1979.

On October 11, 1994, the PTAB issued its decision finding that the Board incorrectly classified the improvements to the mobile homes in Four Seasons and Greenview as real property and, therefore, improperly assessed the value of those improvements to the Yoders and the Lakens. The Board appealed that decision to the trial court, which affirmed the judgment of the PTAB.

■ In reviewing a decision of the PTAB, we are bound by the

same standard of review applicable to any proceeding under the Administrative Review Law (*La Salle Partners, Inc. v. Illinois Property Tax Appeal Board* (1995), 269 Ill. App. 3d 621, 632), which provides, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." (735 ILCS 5/3—110 (West 1994).) Thus, on administrative review, "it is not a court's function to reweigh the evidence or make an independent determination of the facts." (*Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 88.) Instead, this court is to ascertain whether the findings and decision of the agency are against the manifest weight of the evidence. (*Abrahamson*, 153 Ill. 2d at 88; *La Salle Partners, Inc.*, 269 Ill. App. 3d at 632.) An administrative agency decision on a fact is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. (*Abrahamson*, 153 Ill. 2d at 88; *Garner v. Department of Employment Security* (1995), 269 Ill. App. 3d 370, 373-74.) Thus, an administrative finding on facts is not contrary to the manifest weight of the evidence merely because an opposite conclusion is reasonable or because the reviewing court might have ruled differently. (*Abrahamson*, 153 Ill. 2d at 88; *Thurow v. Police Pension Board* (1989), 180 Ill. App. 3d 683, 686.) If the record contains evidence to support the agency's decision on the question of fact, that decision should be affirmed. *Abrahamson*, 153 Ill. 2d at 88-89.

■ In addition, because the question of whether an item constitutes an improvement to real estate is a mixed question of law and fact, we are required to undertake one more step in our analysis. This district has previously held that the issue of whether items constitute fixtures, so affixed to the realty as to become an essential part thereof, is a mixed question of law and fact. (*Davis Store Fixtures, Inc. v. Cadillac Club* (1965), 60 Ill. App. 2d 106, 110.) Our supreme court has distinguished between a "fixture" and an "improvement" to real property. (*St. Louis v. Rockwell Graphic Systems, Inc.* (1992), 153 Ill. 2d 1, 4.) We determine that whether items constitute improvements to real estate is also a mixed question of law and fact. As a mixed question of law and fact, we must determine whether the findings of fact are against the manifest weight of the evidence (735 ILCS 5/3—110 (West 1994)) and subsequently engage in our own independent analysis in applying those facts to the matters of law (*Northern Illinois Medical Center v. Home State Bank* (1985), 136 Ill. App. 3d 129, 142-43).

■ We determine that the trial court correctly found that the PTAB's findings of fact were not against the manifest weight of the evidence. In arriving at its conclusion that the canopies, decks, porches,

and garages placed on the property by the owners of the mobile homes were not realty, the PTAB found that: (1) the mobile homes themselves were not considered real property by the assessment officials; (2) mobile home owners must obtain the approval of management to make additions and alterations to the mobile homes; (3) most of the canopies and decks were not affixed to the land but, rather, to the mobile homes themselves; (4) the garages and enclosed porches were resting on concrete slabs, which generally had no footings; (5) the improvements constructed by the mobile home owners were not intended by the mobile home park owners to permanently improve the real estate; (6) the "items in question" are not required by the park owner; (7) the items are purchased and installed by the mobile home owners; and (8) the items are removed when the mobile home leaves the park, unless the mobile home is resold to a different individual. Our review of the record from the PTAB hearing discloses that all of these findings of fact had a basis or bases in the record. Because the record contains evidence to support the PTAB's decisions regarding these questions of fact, we determine that the PTAB's findings are not against the manifest weight of the evidence. *Abrahamson*, 153 Ill. 2d at 88-89.

Moreover, the plaintiff does not contest these findings of fact in its brief. Points not argued in an appellate brief fail to satisfy the requirements of Supreme Court Rule 341(e)(7) and are waived. (155 Ill. 2d R. 341(e)(7); *Brown v. Tenney* (1988), 125 Ill. 2d 348, 362-63.) Thus, the facts, as determined by the PTAB, are uncontested for purposes of our analysis.

■ Applying these facts to the law, we determine that the trial court did not err in affirming the PTAB's finding that the canopies, decks, porches, and garages were not taxable as real property and are, instead, properly classified as personal property. Under the Property Tax Code, real property is defined as:

> "The land itself, with all things contained therein, and also all buildings, structures and improvements, and other permanent fixtures thereon ***. Included therein is any vehicle or similar portable structure used or so constructed as to permit its use as a dwelling place, if the structure is resting in whole on a permanent foundation." (35 ILCS 200/1—130 (West 1994).)

Under the Mobile Home Local Services Tax Act, structures that qualify under the statutory definition of "mobile home" (35 ILCS 515/1 (West 1994)) are not taxed and assessed as real property (35 ILCS 515/3 (West 1994)). Instead, these structures are subject to a "privilege tax." (35 ILCS 515/3 (West 1994).) Thus, we must determine whether structures are realty or personalty when they are

"attached" to a mobile home, which is assessed and taxed as personalty.

Our determination begins with the application of a statutory test and continues with the application of judicially created tests. The former focuses on the assessing jurisdiction's classification of the property prior to January 1, 1979. (35 ILCS 200/24—5 (West 1994).) If the taxpayer has not met his burden of proving the pre-1979 tax treatment of the property in question, courts classify the item pursuant to criteria set forth in Illinois case law. See *St. Louis*, 153 Ill. 2d at 4-5; see also *Cherry Bowl, Inc. v. Illinois Property Tax Appeal Board* (1981), 100 Ill. App. 3d 326, 328-31.

■ In the instant case, the PTAB correctly determined that the statutory test could not be applied. The Property Tax Code reads:

"No property lawfully assessed and taxed as personal property prior to January 1, 1979, or property of like kind acquired or placed in use after January 1, 1979, shall be classified as real property subject to assessment and taxation. No property lawfully assessed and taxed as real property prior to January 1, 1979, or property of like kind acquired or placed in use after January 1, 1979, shall be classified as personal property." (35 ILCS 200/24—5 (West 1994).)

Our examination of the transcript of the PTAB hearing discloses that there was no evidence presented regarding the Board's pre-1979 assessment treatment of additions at either mobile home park or the Board's treatment of any property "of like kind" prior to 1979. Laken did testify that, as the owner of a trailer home park since 1973, he received no assessments for mobile home additions until 1991, but he also testified that he had no knowledge of whether the owners of the mobile homes paid personal property tax on the additions prior to 1979. Therefore, the Lakens and Yoders did not meet their burden (see *Trahraeg Holding Corp. v. Property Tax Appeal Board* (1990), 204 Ill. App. 3d 41, 43) on this issue. Thus, the item of property at issue should be classified pursuant to criteria set forth in Illinois case law. See *St. Louis*, 153 Ill. 2d at 4-5; see also *Cherry Bowl, Inc.*, 100 Ill. App. 3d at 328-31.

■ ■ In their briefs before this court, the parties argue that the "intention" test laid out in *In re Application of Beeler* applies to the present case, which states:

"Under the intention test, three criteria are applied to evaluate whether property is personalty or realty, or more properly, whether an item has become a fixture. First, the property must be annexed to the realty or to something appurtenant thereto; second, the property must be applied to the use or purpose to

which that part of the realty, with which it is connected, is appropriated; and finally, the party making the annexation must intend to make a permanent accession to the freehold." (*In re Application of Beeler* (1982), 106 Ill. App. 3d 667, 670.)

We note that mobile homes are not taxed and assessed as real property, but are taxed as personalty. (35 ILCS 515/3 (West 1994).) With regard to the first criteria, the PTAB found that some of the additions at issue, such as canopies and decks, are annexed solely to the mobile homes, or personalty. However, testimony revealed that some of them are also attached to the realty, such as canopies bolted into patios. Nevertheless, we find it difficult to conclude that something attached to personalty may be taxed as realty. As to the second criteria, assuming *arguendo* that the additions may enhance the use of the land as a park for mobile homes, we nevertheless find the third criteria dispositive. Annexations by a tenant are presumed to be made for the tenant's benefit and not made to enrich the freehold. (*Cherry Bowl, Inc.*, 100 Ill. App. 3d at 330.) We determine that the evidence presented by the Board at the PTAB hearing was insufficient to overcome this presumption, for the record is clear that both the park owners and the mobile home owners did not intend the additions at issue to become permanent.

Additionally, our supreme court, in a case cited by none of the parties, has set forth the relevant criteria to determine what constitutes an "improvement to real property." (*St. Louis*, 153 Ill. 2d at 4-5.) In the PTAB hearing, both Falkenstein and Elder referred to the additions not as fixtures, but as improvements. Our supreme court stated:

> "Relevant criteria for determining what constitutes an 'improvement to real property' include: whether the addition was meant to be permanent or temporary, whether it became an integral component of the overall system, whether the value of the property was increased, and whether the use of the property was enhanced." (*St. Louis*, 153 Ill. 2d at 4-5.)

First, we determine that the record clearly indicates that the additions at issue were not intended to be permanent additions to the mobile home park and did not become integral components of the park. Second, we note that the "improvements" for purposes of our analysis were improvements to personalty, not realty. Third, while the value of the mobile homes themselves may increase with the additions, nothing in the record indicates that the value of the mobile home park was increased as a result of the additions. Thus, the decision of the PTAB was correctly affirmed by the trial court.

The judgment of the circuit court of Boone County is affirmed.

Affirmed.

INGLIS and GEIGER, JJ., concur.