# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People ex rel. Madigan v. Kole*, 2012 IL App (2d) 110245

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE *ex rel.* LISA MADIGAN, Attorney General of the State of Illinois, Plaintiff-Appellant, v. JULIUS KOLE, Personally as Personal Representative and Trustee of the Estate of Anthony F. Crespo, Deceased, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-11-0245 |
| Filed | April 11, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings on a complaint under the Illinois Estate and Generation-Skipping Transfer Tax Act seeking over $300,000 in additional estate taxes, interest and late-filing penalties arising from an adjustment of deceased's estate tax liability, the trial court erred in entering summary judgment for defendant, the executor of the estate, since the Act imposes personal liability on defendant for unpaid additional estate taxes, the certificate of discharge plaintiff issued to defendant did not discharge defendant from personal liability for the additional estate taxes found to be due, and defendant was personally liable for failing to file a supplemental return and pay the additional taxes; therefore, the judgment for defendant was reversed and summary judgment was entered for plaintiff. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 09-L-892; the Hon. Jorge L. Ortiz, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Christopher M.R. Turner, Assistant Attorney General, of counsel), for appellant. |
| | Daniel F. Konicek and Michael J. Corsi, both of Konicek & Dillon, P.C., of Geneva, and John W. Quinn, of Churchill, Quinn, Richtman & Hamilton, Ltd., of Grayslake, for appellee. |
| Panel | PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion. |
| | Justices Zenoff and Hudson concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiff, Lisa Madigan, the Attorney General of the State of Illinois, on behalf of the People of the State of Illinois, filed a complaint under the Illinois Estate and Generation-Skipping Transfer Tax Act (Act) (35 ILCS 405/1 to 18 (West 2002)) against defendant, Julius Kole, personally. Plaintiff sought over $300,000 in additional estate tax, interest, and late-filing penalties related to the Internal Revenue Service's (IRS's) adjustment of the Anthony F. Crespo estate's estate tax liability. Plaintiff alleged that defendant, as the estate's executor, was personally liable for the additional estate tax and associated interest and penalties due as a result of the adjustment. The parties filed cross-motions for summary judgment (735 ILCS 5/2-1005 (West 2002)), and the trial court granted defendant's motion and denied plaintiff's motion. Plaintiff appeals, arguing that summary judgment should have been granted in her favor (and denied for defendant) because: (1) the Act imposes personal liability on defendant for unpaid additional estate tax; (2) a certificate of discharge that plaintiff issued to defendant did not discharge defendant from personal liability for any additional estate tax; and (3) additional estate tax is due and, as the person required to file a supplemental return, defendant is personally liable for failing to file such return and pay the additional estate tax. We reverse.

¶ 2                                I. BACKGROUND
¶ 3    Anthony F. Crespo died on July 31, 2002. Prior to his death, he had named defendant as the executor of his estate (estate) and as successor trustee of the Anthony F. Crespo Living Trust Dated April 19, 1993. On April 30, 2003, defendant, acting as executor of the estate

-2-

and trustee of the trust, timely made a $127,000 Illinois estate tax payment and requested an extension to file the estate's Illinois estate tax return. The extension request was granted, and, on October 31, 2003, defendant timely filed an Illinois estate tax return that reported an $81,397 Illinois estate tax liability (labeled on the form as the total state death tax credit). Pursuant to the Act, he attached to the return a copy of the estate's federal estate tax return. 35 ILCS 405/6(f) (West 2002).

¶ 4        Plaintiff received the estate's Illinois estate tax return on November 3, 2003. Plaintiff reviewed the attached federal return to determine the amount of estate tax due (reflected on the federal return as the state death tax credit). On November 5, 2003, plaintiff issued a "Certificate of Discharge and Determination of Tax" (Certificate of Discharge), reflecting that $81,397 was owed in estate taxes. The Certificate of Discharge stated, in part: "On the basis of the information submitted, the [plaintiff] has determined that the Illinois estate tax liability, including any interest and penalties of the estate[,] has been paid." It further provided: "This certificate is issued and may be exhibited as evidence of (1) the complete release of all the property of this estate from the lien imposed by the Illinois Estate Tax Law and (2) the discharge from personal liability of the executor of this estate for the estate tax, penalties and interest imposed by the Illinois Estate Tax Law." The estate applied for and received a $45,603 refund.

¶ 5        The IRS subsequently audited the estate's federal estate tax return. On August 11, 2006, the IRS issued a "Report of Estate Tax Examination Changes" (IRS Report or Report), stating that the estate's state death tax credit increased from $81,398[1] to $243,729 (based on the IRS's revised calculation of the federal taxable estate from $2,121,623 to $4,405,106).

¶ 6        On September 16, 2009, plaintiff filed a complaint, seeking from defendant the additional estate tax and related interest and late-filing penalties. Plaintiff alleged that no *supplemental* Illinois estate tax *return* was ever filed on the estate's behalf and that no payment was ever made toward the estate's *additional* Illinois estate *tax* liability. Based on the 2006 IRS adjustment, plaintiff determined that the estate owed $162,332 in additional Illinois estate tax, a $40,583 late-filing penalty, a $27,596 late-payment penalty (through September 8, 2009), and $103,171 in interest (through the same date), with additional interest and penalties accruing. Plaintiff further alleged that defendant was personally liable for the additional tax, interest, and penalties and noted that requests for payment were issued on May 21, 2007, August 17, 2007, and April 21, 2009.

¶ 7        Defendant moved to dismiss plaintiff's complaint, arguing that, through the 2003 Certificate of Discharge, plaintiff had released him from personal liability for any unpaid *additional* estate tax, penalties, or interest. 735 ILCS 5/2-619(a)(6) (West 2002) (the claim "has been released, satisfied of record, or discharged in bankruptcy"). In response, plaintiff argued that the additional tax is a separate assessment; that the Certificate of Discharge stated that it was issued on the basis of the information submitted; that plaintiff routinely issues supplemental Certificates of Discharge; and that plaintiff does not independently enforce the

---

[1]The IRS Report mistakenly recorded the estate's original credit as $81,398 instead of the actual $81,397 amount.

federal tax law addressing the recalculation of estate tax liability. Plaintiff attached to her response the affidavit of John Flores, a supervising assistant Attorney General, who stated that plaintiff routinely issues a Certificate of Discharge after the liability assessed as a result of an originally filed estate tax return is satisfied and that plaintiff also issues a supplemental Certificate of Discharge after liability assessed as a result of a supplemental estate tax return is satisfied. Flores also stated that the estate never paid the additional Illinois estate tax liability that arose as a result of the IRS's adjustment and that plaintiff never issued a supplemental Certificate of Discharge to the estate after the federal audit. On March 17, 2010, the trial court denied defendant's motion to dismiss.[2] Defendant subsequently filed his answer to plaintiff's complaint, admitting that the IRS issued its Report but denying any knowledge of an increase in the estate's credit and demanding proof that the estate owed additional tax and that no supplemental return was filed or payment made.

¶ 8        On July 21, 2010, plaintiff filed her first of two motions for summary judgment, arguing that, pursuant to section 10 of the Act, defendant was personally liable for the estate's unpaid additional estate tax. Specifically, plaintiff argued that defendant, as executor, was personally liable for the unpaid tax liability; a certain amount was due; and the estate failed to pay the additional tax owed. Plaintiff attached to her motion Flores' affidavit; the estate's Illinois estate tax return (with the attached federal estate tax return); and a sample *supplemental* Certificate of Discharge.

¶ 9        In response, defendant admitted that the estate never paid any additional tax to Illinois or filed a supplemental return, but he objected on hearsay grounds to the contents of the IRS Report. Also, he argued that the 2003 Certificate of Discharge unambiguously released him from personal liability for all estate taxes, including any additional estate tax. Finally, he argued that there was no material factual question on the issue of the amount of any additional tax because the document that plaintiff offered to establish this tax, the IRS Report, constituted hearsay.

¶ 10       In his first of two summary judgment motions, defendant argued that the Act does not impose personal liability for one's failure to pay any additional estate tax and, alternatively, that, if the term "Illinois transfer tax" includes "additional tax," then the 2003 Certificate of Discharge discharged him from all personal liability.

¶ 11       In her reply in support of her summary judgment motion, plaintiff argued that defendant had admitted to the amount of additional tax outstanding and due because, in answers to interrogatories, he admitted that the IRS *issued* its Report and he did not deny that the document, attached to the complaint, was a copy of the Report.

¶ 12       Plaintiff also asserted that defendant admitted to the estate's federal tax liability increase on Form 890, "Waiver of Restrictions on Assessment and Collection of Deficiency and Acceptance of Overassessment–Estate, Gift, and Generation-Skipping Transfer Tax" (Waiver). Dean Solovy, the estate's attorney, apparently signed the form, a copy of which plaintiff attached to the motion, on September 7, 2006. The form stated:

> "I consent to the immediate assessment and collection of any deficiencies (increase

---

[2]In the record on appeal, there is no report of proceedings from this hearing.

in tax and penalties) and accept any overassessment (decrease in tax and penalties) shown below, plus any interest provided by law. I understand that by my signing this waiver, a petition to the United States Tax Court may not be made, unless additional deficiencies are determined."

The form reflected a $975,627 increase in federal tax.

¶ 13    On November 4, 2010, the trial court denied the parties' first summary judgment motions, finding that summary judgment was precluded by factual issues, including as to the amounts shown on the uncertified copy of the IRS Report (noting foundational issues with its admission).

¶ 14    On December 6, 2010, plaintiff filed her second summary judgment motion, which included *certified* copies of the IRS Report and the Waiver. In his second summary judgment motion, defendant realleged the arguments he had raised in his first such motion.

¶ 15    The trial court, on February 1, 2011, granted defendant's second summary judgment motion and denied plaintiff's second summary judgment motion. The court found that sections 6(c) and 10(c) of the Act were not ambiguous and did not impose personal liability on an executor for any additional estate tax owed by an estate. The court stated that, had the General Assembly intended for such liability to attach, it would have clearly provided for it in a tax statute. Further, the court noted that it did not need to reach the questions in plaintiff's motion concerning whether plaintiff established the amount of additional tax owed and whether the 2003 Certificate of Discharge absolved defendant of personal liability. Plaintiff appeals.

¶ 16                                II. ANALYSIS

¶ 17                             A. Standard of Review

¶ 18    In this appeal, plaintiff requests that we review the trial court's rulings on the parties' summary judgment motions and consider statutory construction issues. Summary judgment should be granted whenever the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, show that there are no disputed material facts between the parties and that the moving party is entitled to judgment as a matter of law. *People ex rel. Department of Public Health v. Wiley*, 218 Ill. 2d 207, 220 (2006). We review *de novo* the trial court's entry of summary judgment. *Id.* The construction of a statute is a question of law, which we review *de novo*. *Ries v. City of Chicago*, 242 Ill. 2d 205, 216 (2011).

¶ 19                          B. Pick-Up Estate Tax Scheme

¶ 20    Before turning to the arguments raised in this appeal, we review at some length the estate tax scheme in effect in 2002, the year of Crespo's death. Under the Internal Revenue Code of 1986, as amended (IRC), an estate was entitled to a tax credit (the state tax credit or state death tax credit) from the federal estate tax for estate taxes paid to any state, up to a

maximum amount set forth by the IRC. 26 U.S.C. § 2011 (2000). Between 1983 and 2002,[3] "Illinois imposed a 'pick-up' estate tax 'coupled' with federal law." *Brooker v. Madigan*, 388 Ill. App. 3d 410, 411 (2009). Specifically, Illinois tied its estate tax to the federal state tax credit (*id.*) and "defined state estate-tax liability as the amount of the credit for state tax allowable under federal law" (David A. Berek, *Illinois' New Estate-Tax Law*, 91 Ill. B.J. 465 (2003)). "Thus, the state would not impose its own tax; rather, it would receive, or 'pick up,' the amount allocated under federal law." Berek, *supra*, at 465.

¶ 21    The Illinois pick-up estate tax scheme was codified in the Act. *Brooker*, 388 Ill. App. 3d at 412-13. Under the statute, taxable transfers of transferred property having a tax situs in Illinois were taxed at the maximum allowable state tax credit under section 2011 or section 2604 of the IRC (26 U.S.C. §§ 2011, 2604 (2000)). 35 ILCS 405/3 (West 2002). The Act defined a "taxable transfer" as "an event that gives rise to a state tax credit, including any credit allowable as a result of the imposition of an additional tax under Section 2032A(c) of the [IRC]." 35 ILCS 405/2 (West 2002). It defined "state tax credit" as "the credit for state tax allowable under Section 2011 [(estate tax)] or Section 2604 [(generation-skipping transfer tax)] of the [IRC]." *Id.*

¶ 22    The Act defined "Illinois estate tax" (which, along with the "Illinois generation-skipping transfer tax," comprised the "Illinois transfer tax") as "the tax due to this State with respect to a taxable transfer that gives rise to a federal estate tax." 35 ILCS 405/2 (West 2002). The Act imposed an estate tax "on every taxable transfer involving transferred property having a tax situs within [Illinois]." 35 ILCS 405/3(a) (West 2002). The amount of the estate tax was "the maximum state tax credit allowable with respect to the taxable transfer reduced by the lesser of" any certain amounts paid to other states or with respect to property not having a situs in Illinois. 35 ILCS 405/3(b) (West 2002); see also 35 ILCS 405/4(b) (West 2002) (imposing a generation-skipping transfer tax on the "maximum state tax credit allowable"). The Act also required that a copy of the federal return be filed with an Illinois transfer tax return. 35 ILCS 405/6(f) (West 2002).

¶ 23    The Act's provisions addressing the duty to file a return and pay the tax were also coupled with federal law. Section 6(c) of the Act identified who was responsible *for filing a return* (including a supplemental return) *and paying the tax* (including any additional tax that subsequently became due). It stated:

"The Illinois transfer tax return (*including any supplemental* or amended *return*) shall be filed, and the Illinois transfer tax (*including any additional tax that may become due*) shall be paid by the same person or persons, respectively, who are required to pay the

[3]With the passage of the Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. No. 107-16, 115 Stat. 38, the credit for state estate taxes paid was phased out and eventually repealed. 26 U.S.C. § 2011 (2002). Illinois, like some other states with pick-up tax systems, amended the Act to recapture some of the lost revenues. Pub. Act 93-30 (eff. June 20, 2003); see also *Brooker v. Madigan*, 388 Ill. App. 3d 410, 412-13 (2009); see generally Kevin M. Bohl, Note, *The Resurrection of the Death Tax: Decoupling and the Economic Growth and Tax Relief Reconciliation Act of 2001*, 13 Elder L.J. 417 (2005); David A. Berek, *Illinois' New Estate-Tax Law*, 91 Ill. B.J. 465 (2003).

related federal transfer tax and file the related federal return." (Emphases added.) 35 ILCS 405/6(c) (West 2002).

See also 26 U.S.C. §§ 2002, 2203, 6018 (2000) (imposing duty to file the federal return and pay the federal estate tax on the estate's executor or, if none, the estate's representative with possession of estate property). Illinois taxes and returns were due "on the due date or dates, respectively, including extensions, for paying the related federal transfer tax and filing the related federal return." 35 ILCS 405/6(a) (West 2002); see also 35 ILCS 405/8(c)(1) (West 2002) (automatically extending the due date for filing an Illinois return and paying the Illinois tax when the due date for the federal return and tax is extended).

¶ 24        Section 7(a) of the Act addressed supplemental returns and provided as follows:

"(a) Supplemental returns. If the State tax credit is increased after the filing of the Illinois transfer tax return, the person or persons required to file the Illinois transfer tax return and pay the Illinois transfer tax *shall file a supplemental Illinois transfer tax return*. The supplemental return shall be filed and the additional tax shall be paid in the same place and manner as provided in Section 6 of this Act. The due date for the supplemental return and for the payment of the additional tax reported in the supplemental return shall be no later than 3 months after the earliest of:

    (1) the date an amended, related federal return is filed;

    (2) the date an increase in the federal transfer tax is paid or accepted in writing; or

    (3) the date the [IRS] issues a request for evidence of payment of the State tax credit; provided that if the related federal transfer tax may be deferred or paid in installments, then part or all of the additional Illinois transfer tax may be deferred or paid in installments under rules consistent with subsection (b) of Section 6 of this Act." (Emphasis added.) 35 ILCS 405/7(a) (West 2002).

See also *People ex rel. Burris v. Boeger*, 268 Ill. App. 3d 746, 748-49 (1994) ("section 7 of the Act [citation] places an affirmative duty on the taxpayer to file a supplemental Illinois transfer tax return and pay additional tax where the State tax credit is increased after the filing of the Illinois transfer tax return").


¶ 25                                    C. Personal Liability

¶ 26        Turning to the first issue in this appeal, the extent of an executor's personal liability, section 10(c) of the Act stated:

"(c) Personal liability. If the Illinois transfer tax is not paid when due, then the person required to file the related federal return and the transferee of any transferred property having a tax situs within this State *shall be personally liable for the Illinois transfer tax*, to the extent of such transferred property originally received, controlled or transferred to that person or transferee, less the amount of any expenses or charges against the transferred property, related to the taxable transfer, which have a higher priority of payment under applicable law than the Illinois transfer tax." (Emphasis added.) 35 ILCS 405/10(c) (West 2002).

¶ 27        Plaintiff argues that the Act held defendant, who was required to file the federal return

as executor of the estate, personally liable for the additional estate tax due subsequent to the increase in the state tax credit. Plaintiff urges that the statute's plain language unambiguously mandates this reading and is consistent with the Act's coupling of the Illinois and federal estate tax laws and the General Assembly's intent that under the Act the state pick up the entire state tax credit. Plaintiff contends that the trial court's finding that section 10(c) held a federal filer personally liable only for the originally filed return (because the section did not contain the words "additional tax") is improper, ignores the Act's definitions, and fails to read section 10(c) in conjunction with the remainder of the statute. According to plaintiff, the trial court's reading nullifies the Act's collection mechanisms as to any tax liability arising from a subsequent IRS audit of an estate's tax return.

¶ 28    Plaintiff notes that section 10(c) held the federal filer personally liable for the "Illinois transfer tax" not paid by the estate. As noted, the Act defined "Illinois estate tax" as "the tax due to this State with respect to a taxable transfer that gives rise to a federal estate tax." 35 ILCS 405/2 (West 2002). Plaintiff argues that, once it became due, any additional estate tax arising from the IRS's adjustment to the taxable estate and the state tax credit was no less a "tax due to this State with respect to [the] taxable transfer that [gave] rise to [the] federal estate tax" (*id.*) than was the self-assessed estate tax that defendant reported in the original Illinois estate tax return. Thus, plaintiff reasons, the "Illinois transfer tax" included any additional estate tax that arose from the IRS adjustment to the estate's state tax credit.

¶ 29    Defendant responds that the General Assembly intentionally refused to create personal liability for any "additional tax" that an estate might owe after the filing of an initial transfer tax return. He urges that the statute unambiguously distinguished between the "Illinois transfer tax" and the "additional tax" and did not impose personal liability for the "additional tax." Defendant points to sections of the statute that refer to a supplemental return and the additional tax. Specifically, in addition to the sections quoted above, defendant notes that section 8 of the Act, which contained the statute's penalty provisions, provided:

"(a) Failure to file return. In case of failure to file any return required under this Act with the Attorney General by the due date, unless it is shown that the failure to file is due to a reasonable cause, there shall be added to the amount required to be shown as tax on the return 5% of the amount of that tax (*or 5% of the additional tax due in the case of a supplemental return*) if the failure is for not more than one month from the due date, with an additional 5% for each additional month or fraction of a month thereafter during which the failure to file continues, not exceeding in the aggregate 25% of the tax *or, in the case of a supplemental return, 25% of the additional tax.*

(b) Failure to pay tax. In the case of failure to pay the amount of tax shown due on any return required under this Act on or before the due date for payment of that tax, unless it is shown that the failure to pay is due to reasonable cause, there shall be added to the unpaid amount of the tax 0.5% of that unpaid amount if the failure is not more than one month from the due date, with an additional 0.5% for each additional month or fraction of a month thereafter during which the failure to pay continues, not exceeding in the aggregate 25% of the unpaid amount." (Emphases added.) 35 ILCS 405/8(a), (b) (West 2002).

Defendant argues that sections 6, 7, and 8 of the Act distinguished between the initial "Illinois transfer tax" that was based on an initial "Illinois transfer tax return" and an "additional tax" that was based on a "supplemental return," and he urges that the distinction must be applied to section 10(c).

¶ 30 The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000). The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479 (1994). Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction. *Davis v. Toshiba Machine Co., America*, 186 Ill. 2d 181, 184-85 (1999). However, if the statutory language is ambiguous or unclear, this court may look beyond the Act's language to ascertain its meaning. *In re D.D.*, 196 Ill. 2d 405, 419 (2001). A statute is ambiguous if it is capable of more than one reasonable interpretation. *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 604 (2008). " '[S]tatutes imposing a tax are strictly construed against the government and in favor of the taxpayer.' " *Brooker*, 388 Ill. App. 3d at 416 (quoting *In re Consolidated Objections to Tax Levies of School District No. 205*, 193 Ill. 2d 490, 496 (2000)). However, in order to effectuate the legislature's intent, "they must be given a reasonable construction, without bias or prejudice against either the state or the taxpayer." (Internal quotation marks omitted.) *Id.*

¶ 31 In evaluating whether a statute is ambiguous, a court reads the statute as a whole. See *Hytel Group, Inc. v. Butler*, 405 Ill. App. 3d 113, 124-25 (2010); *La Salle Partners, Inc. v. Illinois Property Tax Appeal Board*, 269 Ill. App. 3d 621, 626 (1995) (statute is read as a whole, giving words their plain and ordinary meaning; "statutory language should not be read in isolation"). Reading the statute as a whole, we conclude that section 10(c) of the Act unambiguously imposed on a federal filer personal liability for failure to pay any additional estate tax. We reject defendant's argument that the absence of the term "additional tax," or even "supplemental return," in section 10(c) reflects that the provision does not incorporate it. Reading the Act as a whole, it is clear that "Illinois transfer tax" incorporates any "additional tax," even where "additional tax" is not specifically mentioned.

¶ 32 Section 6(c) of the Act imposes on a federal filer the duty to pay all estate taxes and file all returns for the estate. It states that the "Illinois transfer tax return (including any supplemental or amended return) shall be filed, and the Illinois transfer tax (including any additional tax that may become due) shall be paid by" the federal filer. 35 ILCS 405/6(c) (West 2002). The wording, and parenthetical use, of the term "including any" unambiguously reflect that the "Illinois transfer tax return" includes any supplemental return and that the term "Illinois transfer tax" includes any additional tax. This reading is further supported by the fact that section 2, which contains the statute's definitions, does not contain a separate definition for "supplemental return" or "additional tax," but instead broadly defines "Illinois transfer tax" (as "the Illinois estate tax or the Illinois generation-skipping transfer tax") and "Illinois estate tax" (as "the tax due to this State with respect to a taxable transfer that gives rise to a federal estate tax"). 35 ILCS 405/2 (West 2002). After setting forth (in section 6(c)) the federal filer's duty to file all returns and pay all estate taxes, the Act then provides in section 10(c): "If the Illinois transfer tax is not paid when due," then the federal filer "shall

be personally liable for the Illinois transfer tax." 35 ILCS 405/10(c) (West 2002). Given that section 6(c) clarifies the duty and instructs that the federal filer must file *all* returns and pay *all* estate taxes, section 10(c), we believe, unambiguously, and without the need to again state that the foregoing terms include supplemental returns and additional taxes, imposes personal liability on the federal filer for the failure to file *any* return and/or pay *any* estate tax. Finally, we reject defendant's argument that the inclusion of the terms "additional tax" and "supplemental return" in section 8, the penalty provision, indicates that their absence in section 10(c) reflects a legislative intent to exclude them. In our view, section 8's reference to the foregoing terms is necessary to identify the tax on a supplemental return that is subject to a penalty assessment. 35 ILCS 405/8(a) (West 2002) ("25% of the tax" versus "25% of the additional tax").

¶ 33　　In summary, reading the statute as a whole, it is clear that section 10(c) unambiguously imposes on the federal filer personal liability for the failure to pay any additional tax.

¶ 34　　　　　　　　　　　D. 2003 Certificate of Discharge

¶ 35　　Although not addressed by the trial court, we next assess the import of the 2003 Certificate of Discharge, which defendant raised as an affirmative defense in his summary judgment motion. Here, defendant argues that, even if the Act creates only one Illinois transfer tax, the 2003 Certificate of Discharge was a full, final, and complete discharge of his personal liability for the additional estate tax (and related penalties and interest).

¶ 36　　The 2003 Certificate of Discharge stated, in part: "On the basis of the information submitted, the [plaintiff] has determined that the Illinois estate tax liability, including any interest and penalties of the estate[,] has been paid." It further provided: "This certificate is issued and may be exhibited as evidence of (1) the complete release of all the property of this estate from the lien imposed by the Illinois Estate Tax Law and (2) the discharge from personal liability of the executor of this estate for the estate tax, penalties and interest imposed by the Illinois Estate Tax Law."

¶ 37　　Defendant points to section 10(e) of the Act, which stated:

　　　　"(e) Waiver of Lien and personal liability. If the Attorney General is satisfied that no liability for Illinois transfer tax exists or that the Illinois transfer tax has been *fully* discharged or provided for, the Attorney General *shall issue a certificate* releasing all of the transferred property having a tax situs within the State of Illinois from the lien imposed by this Section. *Issuance of such certificate shall discharge the person required to file the related federal return and any transferee from personal liability for the Illinois transfer tax.*" (Emphases added.) 35 ILCS 405/10(e) (West 2002).

Defendant asserts that section 10(e) of the Act unambiguously instructs that the Attorney General is to determine the amount of tax due from an estate, satisfy herself that the tax due, if any, is paid, and issue one certificate to release the lien and discharge personal liability. Defendant urges that the "Illinois transfer tax" was due when plaintiff "determined" that the amount due was only $81,397, which arose upon Crespo's death in 2002. Further, he claims that, effective November 5, 2003, the 2003 Certificate of Discharge unambiguously discharged him from personal liability for the transfer tax, whether that tax was $81,397 or

any other amount.

¶ 38 Plaintiff argues that the 2003 Certificate of Discharge did not discharge defendant from personal liability for additional estate tax and related penalties and interest not reported in the original Illinois estate tax return. Plaintiff contends that defendant's position ignores the certificate's express language, as well as that of the Act, and urges that the certificate neither referred to nor contemplated the discharge of unknown, future tax liabilities that subsequently arose from IRS adjustments. Plaintiff notes that the certificate specified that it was issued on "the basis of the information submitted" and that it discharged the existing $81,397 Illinois estate tax liability. By its express terms, the certificate did not discharge defendant from any future tax liabilities. Plaintiff notes that, when the certificate was issued, plaintiff was not aware that the Illinois estate tax return undervalued the estate or that the IRS would later increase the state tax credit. It was not until three years later that the IRS increased the credit.

¶ 39 Alternatively, if the statute is ambiguous, plaintiff notes that her practice has been to issue a certificate after the federal filer has paid the reported tax in an original Illinois estate tax return[4] and to issue a supplemental certificate discharging the federal filer from personal liability for any additional estate tax, and she asserts that this court should defer to her interpretation of the statute, since plaintiff is charged with the statute's administration and enforcement. Finally, plaintiff urges that, if a Certificate of Discharge discharges all future liabilities and liens, then it would negate the Act's enforcement provisions and preclude plaintiff's actions to collect any additional tax arising from an IRS adjustment. With no liability for any such additional tax, the federal filer, plaintiff contends, would have little incentive to report IRS adjustments through a supplemental return or to ensure that the estate was accurately valued in the original tax return.

¶ 40 We first conclude that the 2003 Certificate of Discharge did not discharge defendant from personal liability for the additional estate tax that became due as a result of the IRS audit. Clearly, as plaintiff notes, the certificate itself applied only to the liability reflected therein and the figures and information upon which that liability was calculated. It stated that it was issued "[o]n the basis of the information submitted" and listed only the estate's initial $81,397 Illinois estate tax liability. If the information submitted was inaccurate, then the certificate could not effect a "discharge from personal liability" for *all* estate taxes determined to be owed.

¶ 41 Second, we conclude that the statute does not mandate a different result. Section 10(e) does not limit plaintiff to issuing only one certificate for an estate and makes no reference to the "Illinois transfer tax" having been finally discharged. If the General Assembly had intended that only one certificate issue, it could have included language clarifying that plaintiff could issue a certificate only after a liability was fully and finally determined (presumably upon the expiration of the statute of limitations for collection of any additional tax). The provision contains no such language.

---

[4]Plaintiff notes that the certificate is necessary to authorize the Treasurer to issue any refund, where, as here, the federal filer overpaid the Illinois estate tax assessed in the original return.

¶ 42    In summary, the Certificate of Discharge did not discharge defendant from personal liability for any additional estate tax (and related penalties and interest).

¶ 43                     E. Plaintiff's Summary Judgment Motion

¶ 44    Addressing her summary judgment motion, plaintiff next argues that there is no genuine issue of material fact as to whether defendant is personally liable for the estate's $162,332 in unpaid Illinois estate tax and related penalties and interest. Plaintiff asserts that, pursuant to section 10(c) of the Act, the following elements are satisfied: (1) defendant was "the person required to file the related federal return" of the estate; (2) the estate owed Illinois estate tax in a certain amount; and (3) the amount owed was not paid when due. 35 ILCS 405/10(c) (West 2002). Defendant does not dispute that he was the person required to file the estate's related federal return, nor does he dispute that no additional tax was paid. The parties' central dispute concerns whether there is a material factual question concerning the second element. Specifically, we must address the admissibility of the IRS Report and the Waiver, the documents that plaintiff utilized to support her position that the estate owed additional tax. Defendant argues that plaintiff did not offer any admissible evidence that there was any additional tax outstanding (even if defendant would have been personally liable for that tax) and, thus, was not entitled to summary judgment. For the following reasons, we conclude that the IRS Report and the Waiver are properly authenticated and admissible under the public records exception to the hearsay rule to show that the estate owed a certain amount in additional tax; thus, no material factual questions preclude summary judgment in plaintiff's favor.

¶ 45    Again, section 7(a) of the Act provided, in relevant part, that, if "the State tax credit is increased after the filing of the Illinois transfer tax return, the person or persons required to file the Illinois transfer tax return and pay the Illinois transfer tax shall file a supplemental Illinois transfer tax return." 35 ILCS 405/7(a) (West 2002). Following its audit of the estate's federal estate tax return, the IRS, on August 11, 2006, issued its Report, stating that the estate's state death tax credit increased from $81,398 to $243,729 (based on its revised calculation of the federal taxable estate from $2,121,623 to $4,405,106). Further, the Waiver, which was apparently signed by Solovy, the estate's attorney, stated:

        "I consent to the immediate assessment and collection of any deficiencies (increase in tax and penalties) and accept any overassessment (decrease in tax and penalties) shown below, plus any interest provided by law. I understand that by my signing this waiver, a petition to the United States Tax Court may not be made, unless additional deficiencies are determined."

¶ 46    Plaintiff argues that the certified copies of the foregoing documents (which included the stamp and raised seal of the Chicago IRS office and the handwriting of a disclosure specialist, specifying the number of pages, the date, and her signature and title) are admissible and show that the estate owes an additional $162,332 in Illinois estate tax. Plaintiff notes that defendant admitted in his answer to the complaint that the IRS *issued* its Report (which reflected a $162,332 increase in the estate's allowable state tax credit, from $81,397 to $243,729). According to plaintiff, through the Waiver, the estate accepted the

increased federal estate tax liability reflected on the IRS Report. Further, pursuant to section 7(a) of the Act, the estate owed $162,332 in additional estate tax and defendant was required to file a supplemental return and pay the additional tax on the estate's behalf, which he did not do. Specifically addressing the documents' admissibility, plaintiff argues that they are admissible as: (1) self-authenticating documents under Illinois Rule of Evidence 902(1) (Ill. R. Evid. 902(1) (eff. Jan. 1, 2011)); (2) public records under Illinois Rule of Evidence 803(8) (Ill. R. Evid. 803(8) (eff. Jan. 1, 2011)); and (3) business records under Illinois Rule of Evidence 803(6) (Ill. R. Evid. 803(6) (eff. Jan. 1, 2011)).

¶ 47    Evidence such as hearsay, which is inadmissible at trial, is not admissible in support of or in opposition to a summary judgment motion. *Dangeles v. Muhlenfeld*, 191 Ill. App. 3d 791, 799-800 (1989). Basic rules of evidence require that a party lay a proper foundation for the introduction of a document into evidence. *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 247-48 (1991). To properly authenticate a document, a party must present evidence that demonstrates that the document is what the party claims it to be. *Id.*

¶ 48    Under Rule 902(1), certain evidence is self-authenticating and extrinsic evidence of its authenticity is not a prerequisite to its admission, where the document constitutes:

> "(1) Domestic Public Documents Under Seal. *A document bearing a seal* purporting to be that of the United States, or of any State, district, *** or of a political subdivision, department, officer, or agency thereof, *and a signature purporting to be an attestation or execution*." (Emphases added.) Ill. R. Evid. 902(1) (eff. Jan. 1, 2011).

¶ 49    In federal tax challenges, the authenticity and certifications of certified copies of forms similar to the Report have been deemed sufficient under similarly worded federal rules. See, *e.g.*, *Hughes v. United States*, 953 F.2d 531, 539-40 (9th Cir. 1992) (in action seeking to stop IRS collection and addressing authenticity and certification of IRS Forms 4340 ("Certificate of Assessments and Payments"), court held that the documents were admissible as self-authenticating public documents under Federal Rule of Evidence 902(1)[5] (Fed. R. Evid. 902(1)) because they were certified under seal and bore an appropriate signature, regardless of which certifying form was utilized); see also *Schmidt v. Internal Revenue Service*, 717 F. Supp. 763, 764 (D. Kan. 1989) (Form 4340 not hearsay; "certified public documents are

---

[5]Federal Rule of Evidence 902(1) states:

> "The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:
>
> > (1) Domestic Public Documents That Are Sealed and Signed. A document that bears:
> >
> > > (A) a seal purporting to be that of the United States; any state, district, commonwealth, territory, or insular possession of the United States; the former Panama Canal Zone; the Trust Territory of the Pacific Islands; a political subdivision of any of these entities; or a department, agency, or officer of any entity named above; and
> > >
> > > (B) a signature purporting to be an execution or attestation." Fed. R. Evid. 902(1).

proper and admissible evidence" under Federal Rules of Evidence 902(1) and 803(8)).

¶ 50    Here, as plaintiff notes, defendant does not appear to dispute that the IRS Report and the Waiver were properly certified under seal to establish the authentication required for admission. Based on this and the foregoing persuasive authority, we conclude that the documents are self-authenticating public documents under Rule 902(1).

¶ 51    Although certified copies of documents such as the Report and the Waiver are self-authenticating, the documents must nevertheless fit within other rules of evidence, such as the hearsay rule. *In re Garm*, 114 B.R. 414, 416 (Bankr. M.D. Pa. 1990); Christopher B. Mueller & Laird C. Kirkpatrick, 5 Federal Evidence § 9:30 (3d ed. 2011) ("The self-authentication provisions of Fed. R. Evid. 902(1) to (4) complement the broad hearsay exceptions for public records found in Fed. R. Evid. 803. *** If a document is introduced to prove what it asserts, however, no combination of signature, certificate, or seal can make it admissible if it does not satisfy the requirements of one of the hearsay exceptions.").

¶ 52    Turning to the hearsay issue, Rule 803 provides that certain evidence is not excluded as hearsay, even though the declarant is available as a witness. Rule 803(8), which contains the public records exception to the hearsay rule, states:

> "(8) Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, police accident reports and in criminal cases medical records and matters observed by police officers and other law enforcement personnel, unless the sources of information or other circumstances indicate lack of trustworthiness." Ill. R. Evid. 803(8) (eff. Jan. 1, 2011).

¶ 53    Plaintiff contends that the Report and the Waiver are excepted from the hearsay rule under Rule 803(8) because they are public reports and records setting forth both the activities of the IRS and matters observed pursuant to its legal duties. The Report, according to plaintiff, sets forth the IRS's findings from its audit of the estate's federal estate tax return pursuant to the agency's statutory mandate and the Internal Revenue Manual. 26 U.S.C. §§ 6201, 6203, 6501 (2000); Internal Revenue Manual § 4.25.1.1.12(2), (4), (5) (eff. Oct. 25, 2011), *available at* http://www.irs.gov/irm/part 4/irm_04-025-001.html. As to the Waiver, plaintiff notes that the Internal Revenue Manual requires the examiner to seek a waiver from the taxpayer. Plaintiff argues that the Report and the Waiver set forth core IRS activities and its findings observed pursuant to its duties under the IRC.

¶ 54    Defendant argues that the Report and the Waiver are not admissible under Rule 803(8) as public records because they do not set forth the activities of the agency or matters observed pursuant to any legal duty. According to defendant, the Report challenges the estate's valuation of certain property and, thus, constitutes a position paper by the IRS setting forth its opinion that the estate's valuation was flawed. Similarly, defendant argues that the Waiver does not set forth any IRS activities and is not a matter it observed pursuant to a legal duty, but instead purports to be an activity undertaken by Solovy. Further, defendant argues that, even if the Report is excepted from the hearsay rule, the federal estate tax return submitted by the estate, which sets forth a different valuation for the estate, raises a factual

question regarding the correct valuation, thereby creating a material factual question concerning whether there is any additional tax owed by the estate.

¶ 55 As to the Report, no case has addressed the admissibility of such a document over a hearsay objection. However, federal case law involving actions seeking to stop IRS collections reflects that certified copies of similar IRS reports used to substantiate tax liabilities are admissible under the similarly worded Federal Rule of Evidence 803(8).[6] See, *e.g.*, *Rossi v. United States*, 755 F. Supp. 314, 317 (D. Or. 1990) (certified copies of "Forms 4340 are not hearsay because these records fit within the 'public records' exception" of Federal Rule of Evidence 803(8)), *aff'd*, 983 F.2d 1077 (9th Cir. 1993) (table); *Schmidt*, 717 F. Supp. at 764 (certified copies of Form 4340 not inadmissible hearsay; documents are proper and admissible under Federal Rules of Evidence 902(1) and 803(8)).

¶ 56 Based on the foregoing persuasive authority, we conclude that the IRS Report and the Waiver are admissible as public records. As to defendant's argument that plaintiff did not lay a proper foundation for the documents' admission, we note that this requirement does not apply to self-authenticating public records. *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997) ("the [federal] public records exception is one of the few hearsay exceptions that does not require a foundation" since the documents are presumed trustworthy); 2 Robert J. Steigmann & Lori A. Nicholson, Illinois Evidence Manual § 9:14 (4th ed. 2006) ("The proponent of a public record that is not self-authenticating must lay an adequate foundation."); see also 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 8:92 (3d ed. 2011) (burden on objecting party to show record is untrustworthy).

¶ 57 Responding to defendant's suggestion that he may challenge the Report's determination of the estate's value, plaintiff contends that the Act does not require her to prove that the IRS correctly determined the estate's value under the IRC. Rather, the tax owed under the Act is calculated from the estate's value as finally determined in the federal estate tax process. 35 ILCS 405/2, 3, 5(c) (West 2002). Plaintiff urges that, if defendant wished to dispute the IRS's determination, the proper venue to challenge it was before the IRS or in federal tax court, and the Act nowhere authorizes either defendant or plaintiff to relitigate that determination in state court for purposes of calculating the proper tax due under the Act. Plaintiff notes that, if a judge in an Illinois court were to find that the Report's valuation was erroneous under the IRC, any tax reassessed on such a valuation would violate section 5(c)

---

[6]Federal Rule of Evidence 803(8) states:

"(8) Public Records. A record or statement of a public office if:

(A) it sets out:

(i) the office's activities;

(ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or

(iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

(B) neither the source of [the] information nor other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8).

of the Act. 35 ILCS 405/5(c) (West 2002) ("Except as otherwise expressly provided, for purposes of this Act, *the gross value of transferred property shall be its value as finally determined for purposes of the related federal transfer tax*, undiminished by" certain encumbrances upon the property "for which the decedent was personally liable." (Emphasis added.)). We agree and find unavailing defendant's argument on this point. Certified copies of Forms 4340, for example, are used to establish that the IRS has assessed a tax, and a taxpayer may rebut the presumption of correctness. See, *e.g.*, *Dallin v. United States*, 62 Fed. Cl. 589, 600 (2004) (citing cases and noting, "It is well established that a certified copy of the taxpayers' Form 4340 triggers the presumption of correctness in favor of the government, and is 'routinely used to prove that a tax assessment has in fact been made.' " (quoting *Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991))). However, this is done in the context of a proceeding wherein either the IRS seeks to collect a tax or a taxpayer attempts to challenge the IRS's assessment. It cannot be accomplished via a proceeding under the Act. The pick-up estate tax scheme that was codified in the Act necessarily did not empower plaintiff to *independently* assess the value of transferred property (and thereby recalculate the state tax credit) reflected in a federal return. Accordingly, defendant cannot, in this proceeding, challenge the IRS's valuation.

¶ 58    For similar reasons, we reject defendant's argument that plaintiff needed (and failed) to establish that Solovy was authorized to execute the Waiver. As plaintiff notes, the IRS finally determined the increase in the estate's state tax credit and, via the Waiver, defendant accepted this determination. Defendant asserts that plaintiff implicitly tried to admit the Waiver as an admission by a party opponent. He argues that: (1) the certified copy of the Waiver that plaintiff filed in the trial court is an incomplete copy of the form; (2) no evidence was presented to show that Solovy actually signed the form; and (3) plaintiff did not produce an IRS Form 2848 (power of attorney) authorizing Solovy to sign the Waiver. We reject this claim. As to defendant's first argument, we note that both the certified copy of the Waiver and a blank form thereof that defendant offers for comparison consist of two pages (and the IRS certification states that the certified copy consists of two pages). The certified copy, however, appears to be missing a portion of the final sentence in the document. The missing portion is part of a paragraph reciting signature instructions. The relevant sentence, with the missing language emphasized, states: "An attorney or agent may sign this waiver provided the *action is specifically authorized by a power of attorney which, if not previously filed, must accompany this form*." (Emphasis added.) The fact that a portion of an instructional provision has been cut off of a certified copy of an IRS document is not, in and of itself, material or of consequence here. Indeed, the focus of defendant's argument is that the Waiver is incomplete because it does not also contain a copy of a power of attorney, which the omitted language references. We find this argument, too, unavailing. First, the omitted instruction does not require that a power of attorney be attached to the Waiver in all cases; rather, the attorney or agent signing the Waiver need not attach it if a power of attorney was "previously filed." Second, we emphasize that defendant does not essentially challenge the document's authenticity (*i.e.*, he does not argue that it is not a copy of the Waiver the IRS has on file). Rather, he contends that plaintiff failed to produce any evidence showing that Solovy actually signed the form and that, if he did, a copy of the power of attorney is on file

with the IRS showing that he was authorized to sign it. Thus, defendant essentially disputes Solovy's authority to *execute* the Waiver. We reject this argument because the proper venue to challenge Solovy's authority was before the IRS or in federal court. There is no document in the record, such as an affidavit from defendant, stating that Solovy was *not* authorized to represent the estate or even that the IRS's determination of the estate's tax liability *is still being litigated*. Even on the face of the certified copy of the Waiver, there is no IRS notation that the document was rejected by the agency because no power of attorney had been filed in the case.[7] Indeed, the Report identifies Solovy as the person with whom the IRS's findings were discussed, and, as plaintiff notes, the Internal Revenue Manual instructs the examiner to discuss a case only with an attorney or a representative for whom the IRS has on file a power of attorney. Internal Revenue Manual § 4.11.55.1.4.1.5 (eff. Apr. 20, 2010), *available at* http://www.irs.gov/irm/part 4/irm_04-011-055.html ("If a preparer, CPA, attorney, or enrolled agent calls to make an appointment or to discuss a case and the IRS does not have a Form 2848 on file, the examiner must NOT discuss the examination, including acknowledging that an examination is underway or schedule an appointment with the individual before a Form 2848 is received to avoid any possibility of an unauthorized disclosure."). Again, to accept defendant's argument would permit defendant to relitigate the estate's final valuation, which would contravene the Act. Finally, we note that the Act provided that a tax owed thereunder was calculated from an estate's value *as finally determined* in the federal estate tax process. 35 ILCS 405/2, 3, 5(c) (West 2002). A Form 890 waiver represents an estate's acceptance of an overassessment. *Boeger*, 268 Ill. App. 3d at 747. We can find no authority requiring plaintiff to also file a certified copy of a power of attorney on file with the IRS, and we cannot conclude here that she was required to do so. *Cf. id.* at 749 (where the State filed *a report and a Form 890 waiver* to establish an increase in the state tax credit, court held that "the State tax credit was increased by the acceptance of the overassessment. Therefore, the Estate had a duty to file a supplemental return and pay the additional tax"). Accordingly, we reject defendant's claim.

¶ 59    As defendant does not raise this argument, we leave for another day the question whether both the Report and the Waiver are necessary to establish an increase in the state tax credit or whether the Report alone is sufficient.

¶ 60    In summary, the certified copies of the Report and the Waiver (in the absence of any indication that a power of attorney was not on file with the IRS) are properly authenticated and admissible under the public records exception to the hearsay rule to show that the estate owed additional Illinois estate tax in a certain amount. Accordingly, the trial court erred in denying plaintiff's summary judgment motion.

---

[7]Indeed, as plaintiff notes, various documents in the record reflect that defendant authorized Solovy to prepare returns and represent the estate in tax matters: (1) the estate's Illinois estate tax return received by plaintiff in 2003 identifies Solovy as the preparer; (2) a 2003 application for an extension of time to file the federal estate tax return reflects that Solovy was the filer; and (3) Solovy prepared the federal estate tax return in 2003.

¶ 61                             III. CONCLUSION

¶ 62      In conclusion, the circuit court erred in granting summary judgment in defendant's favor
and denying it in plaintiff's favor. The judgment of the circuit court of Lake County is
reversed, and summary judgment is entered in plaintiff's favor.

¶ 63      Reversed.